Adam McCall (CA Bar No. 302130)
**LEVI & KORSINSKY LLP**
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7890
Facsimile:  (202) 333-2121
Email: amccall@zlk.com

Elizabeth K. Tripodi
(VA Bar No. 73483, DC Bar No. 979154)
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: etripodi@zlk.com
(to be admitted *pro hac vice*)

*Attorneys for Plaintiff Todd Malkoff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TODD MALKOFF, On Behalf of Himself and All Others Similarly Situated | Case No.:   **'16 CV 2054 JAH BLM** |
| Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS AND BREACH OF FIDUCIARY DUTIES** |
| SEQUENOM, INC., KENNETH F. BUECHLER, MYLA LAI-GOLDMAN, RICHARD A. LERNER, RONALD M. LINDSAY, DAVID PENDARVIS, CATHERINE J. MACKEY, CHARLES P. SLACIK, and DIRK VAN DEN BOOM, | **JURY TRIAL DEMANDED** |
| Defendants. | |

- 1 -

Plaintiff Todd Malkoff ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this action, individually, as a public stockholder of Sequenom, Inc. ("Sequenom" or the "Company") against the members of Sequenom's Board of Directors (the "Board" or the "Individual Defendants") and Sequenom for their violations of Section 14(d)(4), and Rule 14d-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC") pursuant to Section 14 under the Securities Exchange Act of 1934, as well as Sections 14(e), and 20(a), and on behalf of himself and a class of public stockholders of Sequenom against the Individual Defendants for breach of fiduciary duty under Delaware law.  Specifically, Defendants solicit stockholder approval of the sale of the Company to Laboratory Corporation of America Holdings ("LabCorp" or "Parent") through LabCorp's wholly owned subsidiary Savoy Acquisition Corp. ("Merger Sub") (the "Proposed Transaction") through a recommendation statement that omits to state material facts necessary to make the statements therein not false or misleading. Stockholders need this material information to decide whether to tender their shares or pursue their appraisal rights.

2.     On July 27, 2016, the Company announced that it had entered into

a definitive agreement (the "Merger Agreement") by which LabCorp, through its wholly owned subsidiary, Savoy Acquisition Corporation ("Merger Sub"), would commence a tender offer (the "Tender Offer") to acquire all of the outstanding shares of Sequenom for $2.40 per share in cash (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $2.5 billion.

3.     On August 9, 2016, LabCorp commenced the Tender Offer, which is set to expire at the end of the day, immediately after 11:59pm Eastern Time, on September 7, 2016 (the "Expiration Date"). The Tender Offer provides that the number of shares of Sequenom common stock that have to be validly tendered, together with the shares beneficially owned by LabCorp and Merger Sub, if any, must represent at least one share more than one-half (1/2) of the total number of outstanding shares of Sequenom common stock as of the Expiration Date or at the time and date to which the Tender Offer has been extended. The Tender Offer is not subject to any financing condition.

4.     In connection with the commencement of the Tender Offer on August 9, 2016, the Company filed a Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC. The Recommendation Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information about the process leading to the Merger Agreement. Without all material information Sequenom

stockholders cannot make an informed decision to exchange their shares in the Exchange Offer.  The failure to adequately disclose such material information constitutes a violation of §§ 14(d)(4), 14(e) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision regarding tendering their shares in connection with the Proposed Transaction about whether to exchange their shares.

5.     For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.   Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under §§ 14(d), 14(e) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction). This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     The Court has personal jurisdiction over all of the defendants because each is either a corporation that conducts business in and maintains operations in this District, or is an individual who is either present in this

District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Sequenom maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

9.      Plaintiff is, and has been at all times relevant hereto, a stockholder of Sequenom.

10.      Sequenom is a corporation organized and existing under the laws of the State of Delaware.  It maintains its principal executive offices at 3595 John Hopkins Court, San Diego, California, 92121.   Common stock in

Sequenom is publicly traded on the NASDAQ under the ticker symbol "SQNM." Sequenom is named as a defendant herein solely for the purpose of providing full and complete relief.

11.   Defendant Kenneth F. Buechler ("Buechler") serves as Chairman of the Board of Directors and has served as a director since 2009.

12.   Defendant Myla Lai-Goldman ("Lai-Goldman") has served as a director since 2012.

13.   Defendant Richard A. Lerner ("Lerner") has served as a director since 2007.

14.   Defendant Ronald M. Lindsay ("Lindsay") has served as a director since 2003 and previously served as Executive Vice President, Strategic Planning and Executive Vice President of Research and Development.

15.   Defendant David Pendarvis ("Pendarvis") has served as a director of the Company since 2009.

16.   Defendant Catherine J. Mackey ("Mackey") has served as a director since June 2015.

17.   Defendant Charles P. Slackik ("Slackik") has served as a director since 2012.

18.   Defendant Dirk van den Boom ("van den Boom") has served as the President and Chief Executive Officer of the Company since December 2015 after his appointment as interim President and Chief Executive Officer in

September 2015.  Defendant van den Boom has served as a director since April 2015

19.     Defendants Buechler, Lai-Goldman, Lerner, Lindsay, Pendarvis, Mackey, Slackik, and van den Boom are collectively referred to herein as the "Individual Defendants," and the Individual Defendants other than Hu are sometimes collectively referred to herein as the "Board."

20.     Defendants Sequenom and the Individual Defendants are collectively referred to as the "Defendants."

21.     LabCorp, a non-party, is a healthcare diagnostics company. LabCorp provides clinical laboratory and drug development services, as well as diagnostic solutions.

22.     Merger Sub is a Delaware corporation, a wholly-owned subsidiary of LabCorp, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings his claim for breach of fiduciary duties against the Individual Defendants (Count IV) individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Sequenom common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

24.     Plaintiff's claim is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

25.     The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of July 26, 2016, there were approximately 119,243,357 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Sequenom or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

26.     Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, among inter alia:

(a)     Have the Defendants solicited stockholder approval of the Proposed Transaction with a materially false, misleading and/or incomplete proxy statement;

(b)     Is the Class entitled to injunctive relief or damages as a result of Defendants' wrongful conduct;

(c)     Whether Defendants have disclosed and will disclose all material facts about the Proposed Transaction to stockholders;

(d)     Have the Individual Defendants breached their fiduciary duties of loyalty and/or care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction; and

(e)     Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

27.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

28.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**<u>INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES</u>**

30.     By reason of Individual Defendants' positions with the Company as officers or directors, they are in a fiduciary relationship with Plaintiff and the other public stockholders of Sequenom and owe them fiduciary duties of care and loyalty.

31.   To comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a)   adversely affects the value provided to the corporation's stockholders;

(b)   favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(c)   adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholders; and/or

(d)   will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public stockholders.

32.   In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a)   participating in any transaction where the Individual Defendants' loyalties are divided;

(b)   participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and/or

(c)   unjustly enriching themselves at the expense or to the detriment of the public stockholders.

33.    In the context of selling the Company such as in the Proposed Transaction, the Individual Defendants' fiduciary duties obligated them to, *inter alia*, act reasonably to maximize stockholder value and disclose all material information to stockholders.

34.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary duties, including their duties of care, loyalty, good faith and candor owed to Plaintiff and the other public stockholders of Sequenom.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

35.    Sequenom develops diagnostic products and services, including molecular genetic tests to provide early patient management information for obstetricians, geneticists, and maternal fetal medicine specialists.   Sequenom was founded in 1994 and is based in San Diego, California.

36.    In a press release dated July 27, 2016, the Company announced that it had entered into the Merger Agreement with LabCorp and LabCorp's subsidiary, Merger Sub, pursuant to which the Company will be acquired for $2.40 in cash in the Tender Offer.   This represents a total equity value of approximately $302 million.

37.    In relevant part, the press release reads:

BURLINGTON, N.C., and SAN DIEGO, July 27, 2016 /PRNewswire/ -- Laboratory Corporation of America® Holdings (LabCorp®) (NYSE:LH), the world's leading healthcare diagnostics company, and Sequenom, Inc. (NASDAQ: SQNM), a pioneer in non-invasive prenatal testing (NIPT) for reproductive health, today announced that they have entered into a definitive agreement and plan of merger under which LabCorp would acquire all of the outstanding shares of Sequenom in a cash tender offer for $2.40 per share, or an equity value of $302 million, which represents a total enterprise value of approximately $371 million, including net indebtedness.

 "Sequenom's market-leading NIPT and genetic testing capabilities will advance LabCorp's strategy to deliver world-class diagnostic solutions," said David P. King, chairman and chief executive officer of LabCorp. "This is exactly the kind of strategic acquisition that LabCorp seeks: Sequenom was the first laboratory to offer a clinically validated NIPT test (MaterniT®21) and has performed more than 500,000 tests to date. Sequenom's proven best-in-class technology and strong research complement LabCorp's extensive women's health offering, providing patients and physicians with one source for the most complete range of testing options in women's health, including NIPT and reproductive genetics."

King added: "Sequenom expands LabCorp's geographic reach both domestically and internationally, offering services through licensing and commercial partnerships with an emphasis on the European Union and Asia Pacific. The addition of Sequenom to the LabCorp family meets our stated financial criteria, and creates a market leader in NIPT, women's health and reproductive genetics, furthering our mission to improve health and improve lives around the globe."

"We are extremely excited to join LabCorp in its mission to deliver world-class diagnostic solutions," said Dirk van den Boom, Ph.D., president and CEO, Sequenom. "Strategically, this transaction makes sense. LabCorp is the world's leading healthcare diagnostics company, providing comprehensive clinical laboratory and end-to-end drug development services. Sequenom is a pioneer in noninvasive prenatal testing for reproductive health. Over the last nine months, Sequenom has vastly enhanced its technology, operations, and business prospects. The opportunities this transaction presents are significant and important both for our reproductive health business as well as our

liquid biopsy strategy. Becoming part of LabCorp helps Sequenom reach a much broader market for our innovative testing."

38.     On August 9, 2016, LabCorp and Merger Sub commenced the Tender Offer and the Company filed the Recommendation Statement with the SEC.  The Tender Offer is currently scheduled to close on September 7, 2016.

**The Process Preceding the Execution of the Proposed Transaction**

39.     In August 2015, the Company began to explore potential strategic and financial alternatives due to its need to refinance approximately $130 million of convertible debt.

40.     At the direction of the Board, the Company's financial advisor, J.P. Morgan, reached out to approximately 25 parties between August 23, 2015 and September 24, 2015 for a potential partnership or strategic transaction.  Eight parties, including LabCorp, Company A, Company, B, and Company C, expressed enough of an interest that J.P. Morgan provided a confidentiality agreement for negotiation.

41.     Between September 2015 and November 2015, Sequenom management held eleven meetings with potentially interested parties.  During this time, the Company entered into confidentiality agreements containing standstill provisions with Companies A, B, C, and LabCorp.

42.     Also during this time, on September 18, 2015, the CEO of the Company at the time, Bill Welch, resigned, and Defendant van den Boom was

appointed as interim CEO.

43.     Company C submitted its first proposed transaction on October 18, 2015, suggesting a $100 million equity investment and $130 million to refinance the convertible debt.  The offer sheet did not include the terms of the preferred stock or refinancing.

44.     At the next scheduled meeting of the Board, the Board directed J.P. Morgan to focus on a potential investment or strategic collaboration, because it believed the Company would be of greater value to stockholders as an independent operation.

45.     LabCorp management met with the Company's management on October 29, 2015 and discussed the prospects for the Company.

46.     J.P. Morgan sent eight parties a process letter on November 3, 2015, providing guidance on how to submit an indication of interest, requesting that such a proposal be made by December 2, 2015.

47.     On December 2, 2015, LabCorp submitted an indication of interest to acquire the Company for $1.90 to $2.06 in cash, to expire on December 18, 2015.

48.     The same day, Companies A and C submitted proposals.  Company A proposed acquiring 19.9% of the Company at an unnamed price, while Company C proposed either a purchase of the Company at $2.51 per share or a purchase of a minority of the Company at $1.52-$1.61 per share.  On December

4, 2015, Company B submitted a proposal of a $50-$100 million equity investment or a purchase of a business segment of the Company.

49.     The Board reviewed these proposals at its meeting held on December 8 and 9, 2015.  Again, the Board directed J.P. Morgan to pursue investment or collaboration proposals rather than outright acquisitions of the Company.  J.P. Morgan informed LabCorp of this priority on December 16, 2015, but LabCorp insisted it had no interest in any other type of transaction.

50.     On December 21, 2015, Defendant van den Boom sent the Board updates on the attempts to refinance as well as negotiations with LabCorp and Companies A, B, and C.  On December 23, 2015, Company C submitted a revision to its $50 million convertible bond refinancing.

51.     Company B delivered a revised proposal on January 6, 2016 to acquire the Company for a price between $1.50 and $3.00.

52.     On January 20, 2016, the Company's senior management met with Company C.

53.     During a regularly scheduled meeting on January 26 and 27, 2016, the Board was updated on the exploration of strategic alternatives, including that Company B had hired four Sequenom employees, and that Sequenom had sent a cease-and-desist letter to Company B.

54.     Company A withdrew from the process on January 27, 2016, because it was not willing to modify its original proposal. The next day,

Company management met with Company B to try to guide Company B toward a transaction that would not require a change-in-control.

55.     The Company presented a counter proposal to Company C on February 2, 2016 that would provide $130 million in financing, and place a Company C nominee on the Board.

56.     On February 14, 2016, Company B withdrew from the process rather than make a non-acquisitive proposal.

57.     The next day, the Company agreed to grant J.P. Morgan the right to act as lead manager and sole bookrunner should the Company need to issue equity or debt securities.

58.     After further negotiations, Company C withdrew from the process to make a financing investment.

59.     On May 13, 2016, LabCorp contacted Defendant van den Boom to express an interest in a potential transaction.  Defendant van den Boom responded that the Company was focused on refinancing its convertible notes.

60.     During a meeting on May 18, 2016, Defendant van den Boom and senior management updated the Board on the refinancing process, including that Company D had contacted him regarding a potential stock-for-stock transaction. The Board then directed Defendant van den Boom to respond that the Company was not interested in a stock transaction.

61.     On June 8, 2016, the Company determined to consider strategic

transactions as well as refinancing, and directed J.P. Morgan to contact Companies B and C and LabCorp, with expectations of a price greater than $3.00 per share. On June 10, 2016, the parties began preliminary due diligence.

62. The CEO of Company D spoke with Defendant van den Boom on June 13, 2016, during which Defendant van den Boom stated that the Company was not interested in a stock transaction "because it would result in dilution to Sequenom's stockholders and would not address Sequenom's outstanding convertible debt."

63. On June 20, 2016, Sequenom executed a term sheet with a lender for financing of up to $150 million, with a fairly high interest rate and significant note repurchase requirements.

64. On June 21, 2016, LabCorp submitted a revised indication of interest for a price between $1.70 and $2.00 per share, asking for an exclusivity period until July 25, 2016.

65. The next day, Company B submitted an offer for $2.00 per share.

66. The Board held a meeting on June 24, 2016, noting that both proposals were below the expectations communicated by J.P. Morgan.

67. The same day, Company D submitted a bid for a stock for stock transaction, with an implied price of $1.24 per share.

68. J.P. Morgan informed LabCorp on June 27, 2016, that the Board had rejected their bid. The next day, Company C declined to place a new bid

for the Company because it lacked strategic fit.  The Company then terminated access to the electronic data room for LabCorp, Company B, and Company C, who had not provided a sufficient offer.

69.     On June 28, 2016, the Company provided additional information to LabCorp regarding its net operating losses ("NOLs") and additional information LabCorp requested in order to prepare a revised offer.

70.     The Board discussed the proposals on June 30, 2016.   Senior management and the Board discussed and declined Company D's offer.

71.     LabCorp submitted a revised indication of interest on July 19, 2016 with a purchase price of $2.30 per share, requesting exclusivity through August 19, 2016.

72.     The Board considered LabCorp's offer later that day, and instructed J.P. Morgan to respond with a proposed price of $2.50 per share. Later that day, LabCorp responded with a price of $2.37 per share. The next day, the Company and LabCorp agreed to a price of $2.40.

73.     The companies negotiated the remaining terms of the merger agreement over the next week.

74.     On July 26, 2016, the Board held a meeting at which it reviewed the Merger Agreement and the Proposed Transaction.  J.P. Morgan presented its fairness opinion and financial analysis.  The Board than approved and agreed to recommend the Merger Agreement.  Later that evening, the Merger Agreement

was executed with LabCorp.

75.    On July 27, 2016, the Company and LabCorp announced the Proposed Transaction.

**The Recommendation Statement Fails to Disclose Material Information**

76.    The Individual Defendants have a fiduciary duty to disclose all material information regarding the Proposed Transaction to Sequenom's stockholders so that they can make a fully informed decision whether to vote for or against the Proposed Transaction.

77.    Nonetheless, the Recommendation Statement fails to disclose material information and misleads stockholders regarding the Tender Offer. The Recommendation Statement fails to disclose any and all information pertinent to potential conflicts of interest on the part of the Individual Defendants, including:

(a) any and all information pertaining to LabCorp's first indication of the possible continued employment of Defendant van den Boom, or any other Sequenom officers, directors, or employees following the consummation of the Proposed Transaction, including but not limited to the timing, content, communications, parties, and form of such an indication;

(b) whether LabCorp ever made any communications pertaining to the potential employment of any Sequenom officers, directors, or employees before entering into a confidentiality agreement with Sequenom; and

(c) any and all information pertaining to the communications referred to in ¶ 77(b), including but not limited to the timing, content, parties, and form of such communications.

78.    As disclosed in the Recommendation Statement, early discussions with LabCorp took place with Defendant van den Boom. Yet the Recommendation Statement fails to disclose whether the parties discussed Defendant van den Boom's employment or how the Company would be run post-closing.

79.    The Recommendation Statement is deficient and misleading in that it fails to disclose any information as to the nature and timing of post-merger employment discussions.   The Recommendation Statement cautions that employment "arrangements have not, to our knowledge, been discussed as of the date of this Schedule 14D-9, it is possible that additional members of our current management team will enter into new employment or consulting arrangements with the Surviving Corporation."   But the Press Release announcing the Proposed Transaction treats such post-merger employment as a given.  Defendant van den Boom stated "'[w]e are extremely excited to join LabCorp in its mission to deliver world-class diagnostic solutions . . . The opportunities this transaction presents are significant and important both for our reproductive health business as well as our liquid biopsy strategy. Becoming part of LabCorp helps Sequenom reach a much broader market for our

innovative testing.'"

80.   The timing and content of any discussion of future employment, even if it did not result in the future employment of Sequenom executives, is material and must be disclosed to Sequenom stockholders before the stockholder vote is held.

81.   Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
**Individual Claims Against All Defendants for
Violations of § 14(e) of the
Securities Exchange Act of 1934**

82.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

83.   Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

84.   As discussed above, Sequenom filed and delivered the Recommendation Statement to its stockholders, which defendants knew or

recklessly disregarded contained material omissions and misstatements as set forth above.

85.    Defendants violated § 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the tender offer commenced in conjunction with the Proposed Transaction.    Defendants   knew   or   recklessly   disregarded   that   the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

86.    The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the tender offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants.

87.    In so doing, defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of § 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation

of the Recommendation Statement, defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

88.    The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

89.    Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

90.    The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II
### Individual Claims Against All Defendants for
### Violations of § 14(d)(4) of the
### Securities Exchange Act of 1934 and
### SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)

91.   Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

92.   Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

93.   Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

94.   The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

95.   Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

96.   The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

97.   The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

**COUNT III**
**Individual Claims Against All Defendants**
**for Violations of § 20(a) of the**
**1934 Act Against the Individual Defendants**

98.   Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

99.   The Individual Defendants acted as controlling persons of Sequenom within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Sequenom and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content

and dissemination of the various statements that plaintiff contends are false and misleading.

100.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

101.   In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Recommendation Statement.

102.   By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

103.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d)(4) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

**COUNT IV**
**Class Claims Against Individual Defendants for**
**Breach of Fiduciary Duties**

104.   Plaintiff repeats all previous allegations as if set forth in full herein.

105.   The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith, and independence owed to Sequenom and its public stockholders and have acted to put their personal interests ahead of the interests of Sequenom and its stockholders.

106.   By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and the other public stockholders of the Company of the true value inherent in and arising from Sequenom.

107.   The Individual Defendants have violated their fiduciary duties by approving the Merger Agreement without regard to the effect of the Proposed Acquisition on Sequenom and its public stockholders.

108.   By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Sequenom, Plaintiff and the Class.

109.   As a result of the Individual Defendants' unlawful actions, Plaintiff and the public stockholders of Sequenom will be irreparably harmed in that they will not receive their fair portion of the value of Sequenom's assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to Sequenom and its public stockholders, will not engage in arm's-length negotiations on the Proposed Acquisition terms and may consummate the Proposed Acquisition, all to the irreparable harm of Sequenom and its public stockholders.

110.   Sequenom and its public stockholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Sequenom and its public stockholders be fully protected from the immediate and irreparable injury which the Individual Defendants' actions threaten to inflict.

111.   Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    declaring that the Recommendation Statement is materially false or misleading;

(C)    enjoining, preliminarily and permanently, the Proposed Transaction;

(D)    in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)    directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties.

(F)    awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated:  August 15, 2016            **LEVI & KORSINSKY LLP**


By:  s/ Adam C. McCall
Adam C. McCall (CA Bar No. 302130)
LEVI & KORSINSKY LLP
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel: (213) 985-7290
Fax: (202) 333-2121
Email: amccall@zlk.com

Elizabeth K. Tripodi
(VA Bar No. 73483, DC Bar No. 979154)
(to be admitted *pro hac vice*)
LEVI & KORSINSKY LLP
1101 30th Street NW, Suite 115
Washington, DC 20007

Tel: (202) 524-4290
Fax: (202) 337-1567
Email: etripodi@zlk.com

*Attorneys for Plaintiff Todd Malkoff and the Proposed Class*